THE HONORABLE JOHN C. COUGHENOUR
SPECIAL MASTER GALE R. PETERSON

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VERITAS OPERATING CORPORATION,
a Delaware Corporation,

               Plaintiff,

    vs.

MICROSOFT CORPORATION, a
Washington Corporation,

               Defendant,
_____

MICROSOFT CORPORATION, a
Washington Corporation,

               Counterclaim Plaintiff and
               Counterclaim Defendant,

    vs.

VERITAS OPERATING CORPORATION,
a Delaware Corporation, and VERITAS
SOFTWARE CORPORATION, a Delaware
corporation,

               Counterclaim Defendants
               and Counterclaim
               Plaintiffs.

Case No. CV 06-0703 JCC

**MICROSOFT CORPORATION'S
MOTION FOR SUMMARY
JUDGMENT ON VERITAS' CLAIM
OF INFRINGEMENT OF U.S.
PATENT NO. 5,469,573, AND
MEMORANDUM IN SUPPORT**

**NOTE ON MOTION CALENDAR:**
September 21, 2007 Per Court Order of
April 17, 2007

ORAL ARGUMENT REQUESTED

CV 06-0703 JCC
MICROSOFT'S MOTION FOR SUMMARY JUDGMENT ON
VERITAS' CLAIM OF INFRINGEMENT OF U.S. PATENT
NO. 5,469,573, AND MEMORANDUM IN SUPPORT

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     SUMMARY OF RELIEF SOUGHT BY THIS MOTION ............................................. 3

III.    BACKGROUND ................................................................................................ 4

    A.      The '573 Patent Does *Not* Claim All Ways To Install (Or Reinstall)
        A Previously Installed (Configured) Operating System Onto A Computer ........ 4

    B.      The Accused Software Has Many Non-Infringing Uses ..................................... 5

    C.      Veritas' Allegations Of Hypothetical Infringement ........................................... 8

IV.     THE PATENT LAW IMPOSES A STRICT BURDEN ON VERITAS ....................... 9

    A.      To Protect The Public From Overreaching Patent Owners, The
        Courts Strictly Limit The Reach Of The Patent Infringement Statutes ............... 9

    B.      Veritas' Burden On This Motion For Summary Judgment ............................... 10

V.      BECAUSE OF THE SUBSTANTIAL
    NON-INFRINGING USES, MICROSOFT'S
    PUBLICATION AND DISTRIBUTION OF THE ACCUSED SOFTWARE
    CANNOT BE CONTRIBUTORY INFRINGEMENT UNDER SECTION
    271(C) OR INDUCEMENT INFRINGEMENT UNDER SECTION 271(B) .............. 12

VI.     MICROSOFT DISTRIBUTING SOFTWARE
    INFORMATION, AND SOFTWARE TRANSPORT MEDIA
    (NOT USED IN AN ACCUSED PROCESS), AS A MATTER OF
    LAW CANNOT CONSTITUTE CONTRIBUTORY INFRINGEMENT ................... 16

VII.    VERITAS CANNOT SHOW *INDIRECT* INFRINGEMENT
    BY MICROSOFT BECAUSE IT CANNOT SHOW *DIRECT*
    INFRINGEMENT BY A CUSTOMER OF MICROSOFT PERFORMING THE
    CLAIMED METHODS USING MICROSOFT'S SOFTWARE INFORMATION..... 18

VIII.   VERITAS CANNOT SHOW THE
    INTENT REQUIRED FOR INDUCEMENT
    OR RECKLESSNESS REQUIRED FOR WILLFUL INFRINGEMENT ................... 20

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

IX.   THE COURT SHOULD PROHIBIT VERITAS FROM SEEKING
      DAMAGES FOR ANYTHING BEYOND THE SPECIFIC INSTANCES
      OF DIRECT INFRINGEMENT—IF ANY—VERITAS ESTABLISHES *NOW*......... 22

X.    CONCLUSION.............................................................................................. 24

1

# <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

<u>Cases</u>

4

*Alloc, Inc. v. Int'l Trade Comm'n,*
5
   342 F.3d 1361 (Fed. Cir. 2003) ........................................................................... 12

6

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.,*
7
   239 F.3d 1343 (Fed. Cir. 2001) ........................................................................... 11

8

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986).................................................................................... 10, 11
9

10

*Aro Mfg. Co. v. Convertible Top Replacement Co.,*
   365 U.S. 336 (1961)............................................................................................ 19
11

12

*Celotex Corp. v. Catrett,*
   477 U.S. 324 (1986).......................................................................................... 10

13

14

*Dawson Chemical Co. v. Rohm & Haas Co.,*
   448 U.S. 176 (1980)...................................................................................... 12, 13

15

16

*Deepsouth Packing Co. v. Laitram Corp.,*
   406 U.S. 518 (1972)............................................................................................. 9

17

18

*DSU Med. Corp. v. JMS Co.,*
   471 F.3d 1293 (Fed. Cir. 2006) ................................................................ 4, 20, 21

19

20

*Dynacore Holdings Corp. v. U.S. Philips Corp.,*
   363 F.3d 1263 (Fed. Cir. 2004) ....................................................... 4, 13, 19, 23

21

22

*E-Pass Techs., Inc. v. 3Com Corp.,*
   473 F.3d 1213 (Fed. Cir. 2007) ......................................................................... 18

23

24

*Golden Blount, Inc. v. Robert H. Peterson Co.,*
   365 F.3d 1054 (Fed. Cir. 2004) ................................................................... 11, 22

25

26

*Hodosh v. Block Drug Co.,*
   833 F.2d 1575 (Fed. Cir. 1987) ..................................................................... 3, 13

27

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

*Illinois Tool Works Inc. v. Independent Ink, Inc.,*
    547 U.S. 28 (2006) ................................................................................ 12

*In re Seagate Technology, LLC,*
    ___F.3d___, 2007 WL 2358677 (Fed. Cir. August 20, 2007)......................... 4, 21

*Joy Techs., Inc. v. Flakt, Inc.,*
    6 F.3d 770 (Fed. Cir. 1993) ................................................................ 4, 18, 19

*KSR Int'l Co. v. Teleflex Inc.,*
    127 S. Ct. 1727 (2007)........................................................................... 10

*L & W, Inc. v. Shertech, Inc.,*
    471 F.3d 1311 (Fed. Cir. 2006) ............................................................... 11

*Laitram Corp. v. Rexnord, Inc.,*
    939 F.2d 1533 (Fed. Cir. 1991). .............................................................. 11

*Lindemann Maschinenfabrik GmbH v. American Hoist & Derrick Co.,*
    895 F.2d 1403 (Fed. Cir. 1990) ............................................................... 11

*Lucent Tech. v. Gateway, Inc.,*
    2007 WL 925510 *2 (S.D. Cal. March 21, 2007) ........................................ 14

*Mendenhall v. Cedarapids, Inc.,*
    5 F.3d 1557 (Fed. Cir. 1993) ................................................................... 18

*Microsoft Corp. v. AT&T Corp.,*
    127 S. Ct. 1746 (2007)..................................................................... passim

*Minn. Mining & Mfg. Co. v. Chemque, Inc.,*
    303 F.3d 1294 (Fed. Cir. 2002) ............................................................... 20

*Moleculon Research Corp. v. CBS, Inc.,*
    793 F.2d 1261 (Fed. Cir. 1986)…………………………………………………..21

*Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.,*
    210 F.3d 1099 (9th Cir. 2000) ................................................................. 11

*Novartis Pharm. Corp. v. Eon Labs Mfg.,*
    363 F.3d 1306 (Fed. Cir. 2004)................................................................ 19

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

*NTP, Inc. v. Research In Motion, Ltd.*,
　　418 F.3d 1282 (Fed. Cir. 2005) .................................................................... 3, 9, 16, 17

*Oak Indus., Inc. v. Zenith Electronics Corp.*,
　　726 F. Supp. 1525 (N.D. Ill. 1989) ...................................................................... 23

*Ormco Corp. v. Align Tech., Inc.*,
　　463 F.3d 1299 (Fed. Cir. 2006) ......................................................................... 2, 18

*PharmaStem Therapeutics, Inc. v. Viacell, Inc.*,
　　491 F.3d 1356 (Fed. Cir. 2007) ............................................................................ 16

*TV Interactive Data Corp. v. Microsoft Corp.*,
　　No. C 02 02385 JSW, 2005 WL 1910929 at *4 (N.D. Cal. Aug. 10, 2005) ........................ 14

*Universal Electronics, Inc. v. Zenith Electronics Corp.*,
　　846 F. Supp. 641 (N.D. Ill. 1994) ......................................................................... 14

*UTStarcom, Inc. v. Starent Networks Corp.*,
　　2005 WL 3299714 (N.D. Cal. Dec 6, 2005) ............................................................ 18

*Warner-Lambert Co. v. Apotek Corp.*,
　　316 F.3d 1348 (Fed. Cir. 2003) ............................................................................ 13

**Statutes**

35 U.S.C. § 271 ..................................................................................... passim

**Rules**

Fed. R. Civ. P. 56(b) .................................................................................. 1, 15

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

**MOTION**

Pursuant to Fed. R. Civ. P. 56(b), Microsoft Corporation ("Microsoft") moves for summary judgment against Veritas on its Fourth Counterclaim, for alleged infringement of a method patent, U.S. Patent No. 5,469,573 ("the '573 Patent") (APX0001–15[1]), more particularly as set forth in Section II below.

This Motion is based on the below Memorandum in Support, as well as the accompanying Declaration of Xuan-Giang Tran and accompanying Appendix.

**MEMORANDUM**

**I.     INTRODUCTION**

Veritas alleges infringement by, and seeks damages on, each unit of Microsoft Windows® Vista (and other) operating system software "sold" by Microsoft in the United States, under two theories.  First, it alleges that these operating systems have certain built-in "backup and restore" capabilities that can be used to infringe the '573 Patent.  Second, it alleges that software kits provided by Microsoft to computer manufacturers (OEMs) and to system administrators can be used to install these operating systems onto computers using a process that infringes the '573 Patent.  Each theory fails under multiple rules of U.S. Patent Law.

Veritas acts as if the '573 Patent claims multi-purpose software with certain capabilities.  It does not.  The '573 Patent claims only certain methods of use.  There is a huge difference between a patent claim on a method versus a patent claim on a product with certain capabilities.  "Method claims are only infringed when the claimed process is performed, not by the sale of an apparatus that is capable of infringing use."  *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1310-11 (Fed. Cir. 2006) (citations omitted).  Thus, where a patent claimed a method in which a dental appliance is replaced at 2 to 20 day intervals, the Federal Circuit

---

[1]     Citations to "APX" refer to page numbers of the Appendix, which includes excerpts of pertinent record evidence and is appended to the accompanying Declaration of Xuan-Giang Tran ("Tran Decl.").

1  "reject[ed] the district court's holding that the 'intervals' limitation of this claim merely

2  requires that the devices be 'capable of' being replaced within a 2 to 20 day interval. . . .

3  [Under U.S. Patent Law,] this claim requires that the devices actually be replaced within the

4  specified period." *Id.*

5      The above rule of patent law disposes of most of Veritas' infringement case. The

6  accused software has non-infringing uses, as Veritas' own expert confirmed in deposition.

7  Thus, it is incumbent upon Veritas to prove each separate actual use it contends infringed the

8  patented method. But, Veritas failed to take the discovery necessary to show actual

9  infringement, if any occurred, and has no proof that <u>anyone</u> has ever used the accused software

10  in the allegedly infringing manner.

11      This fundamental flaw in Veritas' case is illustrated by the following hypothetical. A

12  (hypothetical) patent claims a method of installing a spare tire (in case of a flat) by loosening

13  and tightening the lug nuts in a particular order. A retailer sells a kit including a spare tire, a

14  lug wrench, a jack, and instructions describing several installation methods, including the

15  patented one. The patent's owner complains that these kits unfairly embody the patented

16  invention to take sales rightfully belonging to the patent holder, and seeks damages on each

17  such kit sold by the retailer. Under U.S. Patent Law, the patent owner loses. It loses because

18  its patent is on a method, not on a kit. The spare-tire-installation method patent is not infringed

19  by selling the kit, even if the kit gives its buyers the <u>capability</u> to practice the patented method,

20  and even if each kit takes a sale from the patent owner. The kit does not infringe, moreover,

21  even though much of the psychological benefit of the patent's technique—namely, giving the

22  driver ease of mind—is achieved by merely having the kit stored in the trunk. Rather, this

23  spare-tire-installation method patent is infringed <u>only</u> in the rare event that the driver actually

24  puts the kit in the trunk, has a flat tire, and, in the U.S., changes the flat using the patented

25  steps.

26

27

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

Under this and other basic U.S. Patent Law it ignores, Veritas has no case.

This Motion seeks dismissal of the entirety of Veritas' '573 Patent infringement liability and damages claim.  The Court should not permit Veritas to proceed to trial with a case divorced from the strictly limited legal scope of its intellectual property.

## II.   SUMMARY OF RELIEF SOUGHT BY THIS MOTION

1.   The Accused Software Has Substantial Non-Infringing Uses, So Its Distribution Cannot Indirectly Infringe:  Just as a lug wrench can be used without changing a flat tire, Microsoft's accused software can be used without performing the claimed methods.  Veritas' own expert admitted this in deposition.  Consequently, as a matter of law, their distribution is neither inducing infringement nor contributory infringement under 35 U.S.C. § 271 (b) or (c).  *See Hodosh v. Block Drug Co.*, 833 F.2d 1575 (Fed. Cir. 1987).

2.   There Is No Contributory Infringement Because The Accused Software Information Is Not a Physical Material or Apparatus:  Microsoft does not sell the computers, hard disks or backup media required by the claimed methods.  It publishes software information.  Thus, as a matter of law, Microsoft does not contributorily infringe because Sec. 271(c) requires sale, etc. of a (certain type of) physical "material or apparatus for use in practicing a patented process."  *Cf. Microsoft Corp. v. AT&T Corp.*, 127 S. Ct. 1746 (2007).

3.   There Is No Showing of Direct Infringement by a Microsoft Customer, And Thus No Indirect Infringement:  Veritas has not shown that a Microsoft customer has used the accused Microsoft software to perform each step of a claimed method in the U.S., for any of the asserted patent claims.  *See NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282 (Fed. Cir. 2005).  Without such proof, there can be no indirect infringement by Microsoft.  *See Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770 (Fed. Cir. 1993).

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1      4.      Veritas Cannot Show the Intent It Needs to Show To Prove Inducement

2  Infringement or the Recklessness It Needs to Show Willful Infringement:  Veritas has

3  identified no Microsoft managing agent who read the '573 Patent and "knowingly

4  induced infringement and possessed specific intent to encourage another's

5  infringement." *DSU Med. Corp. v. JMS Co*., 471 F.3d 1293, 1306 (Fed. Cir. 2006) (*en*

6  *banc* in relevant part).  Similarly, Veritas' alleged evidence of willful infringement falls

7  far short of the more stringent requirements established recently by the Federal Circuit,

8  in *In re Seagate Technology, LLC,* ___F.3d___, 2007 WL 2358677 (Fed. Cir. August

9  20, 2007) (*en banc*).

10      5.      Veritas' Damages Case Must Be Limited To Only Those Specific Instances Of

11  (Alleged) Direct Infringement, If Any, That Veritas Establishes *Now* (Sufficiently To

12  Reach Trial):  Veritas has identified no instance of direct infringement by Microsoft or

13  a Microsoft customer.  Even if Veritas establishes, in its opposition to this motion, a

14  genuine dispute as to the occurrence of one or more particular instances of direct

15  infringement by Microsoft—or by Microsoft customers, induced with specific intent by

16  Microsoft—its case for liability and damages for '573 Patent infringement must be

17  limited now to those specific instances.  *See Dynacore Holdings Corp. v. U.S. Philips*

18  *Corp.*, 363 F.3d 1263 (Fed. Cir. 2004).

19  **III.    BACKGROUND**

20      **A.    The '573 Patent Does *Not* Claim All Ways To Install (Or Reinstall)
             A Previously Installed (Configured) Operating System Onto A Computer**

22  The asserted claims of the '573 Patent recite a particular method for copying

23  configured operating system files from a computer's storage device (or a first media) to a

24  running computer's storage device.  In some claims, the receiving storage device is (or may be)

25  the same as the originating storage device, e.g., to recover the operating system to the same

26  hard disk after a crash.  In others, the receiving storage device is (or may be) on a different

27

Page 4
CV 06-0703 JCC
MICROSOFT'S MOTION FOR SUMMARY JUDGMENT ON
VERITAS' CLAIM OF INFRINGEMENT OF U.S. PATENT
NO. 5,469,573, AND MEMORANDUM IN SUPPORT

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

computer than the originating storage device, e.g., to clone the configured operating system from a "model" computer to a "target" computer.  ('573 Patent)  The '573 Patent does not patent all ways of installing or reinstalling configured operating system software onto a computer hard disk.  (*See* Nichols TR APX0157:13-APX0158:16; August 20 Morrissey Rebuttal Report ("Morrissey") at APX0022).

## B.    The Accused Software Has Many Non-Infringing Uses

Veritas accuses three, multi-purpose Microsoft software kits called WAIK, OPK and BDD, capable of use with Windows® Vista or Server 2008 operating systems.  These kits include a number of multi-purpose software tools which may, but need not, be used together.  Veritas also accuses certain multi-purpose "built-in" "capabilities" (July 17 Nichols Report ("Nichols Rep.") at APX0094) and "built-in" "functionalities" (*id.* at APX0105) of Microsoft's multi-purpose Windows® Vista operating system and multi-purpose Windows® Server 2008 operating system, called Complete PC Backup and Restore, and Backup and Recovery, respectively.[2]

The accused software can be used to install operating system software in non-accused and non-infringing ways.  And, the accused software can be used for other non-infringing purposes as well.  Below are seven indisputable examples of the myriad substantial non-infringing uses of the accused software:

1.    Install OS Using DVD and "Answer File":  One primary and substantial use of the accused WAIK (or OPK or BDD) software kit is to create an "Answer file" that stores various configuration choices, and helps automate installation of the operating

---

[2]    On July 17, 2007, Veritas for the first time accused software kits distributed since 2001 associated with Windows XP and, later, Windows Server 2003, trying to expand its damages case (for now) nearly fifty-fold, through the back door of its expert reports.  Microsoft has objected to this last-minute attempted expansion.  Prior to July 17, 2007, Veritas had accused only software kits associated with Windows Vista and Server 2008.  In any event, this Motion for Summary Judgment is directed to the entirety of Veritas' infringement claim, whatever its scope.  While the new claims raise a host of new and expanded defenses, the legal flaws in Veritas' claim noted in this Motion apply to the belatedly accused software as well.

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

system (OS) onto a computer.  Then, use a generic operating system (OS) installation DVD to install the OS onto a computer, having the OS's "set up" program look to the "Answer file" for the necessary configuration choices.  Veritas' expert Dr. Nichols admitted in deposition that this "is a non-infringing use of WAIK."  (APX0157:13-APX0158:16 *see also id.* at APX0143:8-APX0144:12; Morrissey at APX0041–42; Nichols Dep. Ex. 633 at APX0172–73 ("Installing from a DVD"), APX0174 ("Building an Answer File"), APX0175–78 ("Walkthrough:  Build a Simple Answer File"), APX0179–88 ("Work with Answer Files in Windows SIM").)

2. <u>Install OS Using Hard Disk Duplication</u>:  Another substantial non-infringing use of OPK is to install the OS onto a hard disk using the above or other non-infringing technique.  Then, copy that configured operating system onto multiple hard disks connected to a hard disk duplication machine, and then remove those hard disks and install them into computers.  This technique is widely used by at least one major OEM.  (*See* Nichols Dep. Ex. 630 at APX0189–91).  It too is non-infringing.  (Morrissey at APX0060–64).

3. <u>Install Win PE and Win RE Onto a Computer For Diagnostics and Repair</u>:  The accused software toolkits are like physical toolkits:  one can use the pliers without ever using the hammer, file, wrench or other tools in the kit.  Here, for example, another substantial non-infringing use of OPK, WAIK and BDD is to use Microsoft's Win PE (Preinstallation Environment) 2.0 software—provided with WAIK, OPK and BDD—without using any other tool provided in the accused WAIK, OPK or BDD software kits.  (*See* Nichols TR at APX0140:1-15; Morrissey at APX0064–65).  Among its many other non-infringing uses, Win PE 2.0 is integrated with Windows Recovery Environment (Windows RE).  An OEM or system administrator can install Win PE and Win RE onto a computer, without using the accused OS deployment methods.  Dr. Nichols admitted in deposition that Win PE and Win RE can be used together in a non-

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

infringing way, for diagnosis and repair of various problems.  (APX0159:1-APX0161:4; *see also* Morrissey at APX0066, APX0080–82).

4.   <u>Other Substantial Non-Infringing Uses of Win PE 2.0</u>:  Dr. Nichols in deposition, and Mr. Morrissey in his expert report/declaration, have identified several other non-infringing uses of the Win PE 2.0 tool provided in the accused software kits.  (*See* APX0131:3-APX0134:6, APX0154:16-APX0156:1; Morrissey at APX0066, APX0080–82).  For example, Win PE can be used to perform the following functions without even arguably infringing the '573 Patent:  (1) create or edit "Boot Configuration Data (BCD)" stores that describe boot applications and boot application settings, (2) restore the boot sector on a computer, (3) map network drives, (4) create new physical or logical drives, (5) partition and format existing drives, (6) otherwise manage disks, partitions, or volumes, etc.  (Morrissey at APX0066).  Indeed, Dr. Nichols himself has written a computer program that uses Win PE 2.0 in a non-infringing way.  (APX0132:10-APX0134:6).

5.   <u>Install Or Recover OS By Booting Win PE From Hard Disk</u>:  Veritas alleges that Win PE serves the role of the "temporary operating system" of the '573 Patent claims.  The claims require that the temporary OS be provided by a "second media" that, as found by the Special Master and not challenged by Veritas, is "physically distinct" from the storage device.  (*See* Special Master's Report and Recommendation on Claim Construction Regarding U.S. Patent No. 5,469,573, *docket no. 128-2* ("SM Report"), at 91).  Another substantial non-infringing use of Win PE 2.0 is to store it on the computer's hard disk and, either in deployment or in a crash recovery situation, "flat boot" the computer from that hard disk.  Used in that manner, the alleged temporary OS is not on a physically distinct media, so this is another non-infringing use of the accused software.  (Morrissey at APX0044–52).

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

6.      Use OS Without Using The Accused Backup and Restore Functionality:  As Dr. Nichols admitted, one can use Windows® Vista and Windows® Server 2008 with more than one hundred different applications without infringing the patent, and, as he further admitted, these operating systems have <u>substantial</u> non-infringing uses.  (APX0113:1-APX0130:24, APX0141:5-APX0142:2; *see also* Morrissey at APX0072).  *Cf. Hodosh* (question is whether there are non-infringing ways of using the product that is sold, whether or not some accused portion of that product has only infringing uses).

7.      Use The Accused Backup and Restore Functionality To Backup, But Not Restore:  As Dr. Nichols also admitted, one can use the accused backup and restore feature (e.g., Complete PC Backup and Restore built into Windows Vista) and not infringe the '573 Patent, by using it to backup files but then not restoring those files.  A computer user is no more required to later restore those files to the computer than a car driver is required to install a spare tire.  Dr. Nichols admitted that this backup-but-no-restore was a <u>substantial</u> non-infringing use of the OS and of the accused built-in functionality of the OS.  (APX0136:12-APX0137:11, APX0146:18-APX0150:25; *see also* Morrissey at APX0073–74).

**C.      <u>Veritas' Allegations Of Hypothetical Infringement</u>**

Microsoft asked Veritas to identify, for each asserted claim of the '573 Patent, each system or method that it contends infringes such claim, and for which it contends Microsoft is liable.  In response to this Interrogatory, Veritas did not identify <u>a single</u> instance of a Microsoft employee or customer (or anyone else) using the accused software in the U.S. to perform the claimed method—for any of the asserted patent claims.  Instead, Veritas described alleged <u>capabilities</u> of Microsoft's software that <u>might</u> be used in an (allegedly) infringing manner—but not a single instance where anyone had actually used them in the manner required by the claims, as part of an infringing method.

Veritas' expert reports, served July 17, 2007, repeat this same mistaken approach. They try to map alleged capabilities to the method claims, but do not map even a single actual use of the software to a single claim.

## ARGUMENT

### IV.     THE PATENT LAW IMPOSES A STRICT BURDEN ON VERITAS

#### A.     To Protect The Public From Overreaching Patent Owners, The Courts Strictly Limit The Reach Of The Patent Infringement Statutes

Patent rights stretched beyond their limits threaten significant harm to the public. Any overreaching by the patent owner necessarily encroaches not merely on an accused infringer's private rights, but on the public's rights and public interest in the unclaimed subject matter of the patent. For this reason, and others, the U.S. Supreme Court time and again has strictly limited the Patent Statute to the precise confines mandated by Congress.

For example, in ruling in 1972 that to "make" a patented invention under Sec. 271(a) requires making and assembling the _entire_ operable patented invention, not merely making all of its components, the Court explained: "We would require a clear and certain signal from Congress before approving the position of a litigant who, as respondent here, argues that the beachhead of privilege is wider, and the area of public use narrower, than courts had previously thought." _Deepsouth Packing Co. v. Laitram Corp._, 406 U.S. 518, 531 (1972) (reversing ruling that the "substantial manufacture of the constituent parts of the machine" sufficed for infringement).[3]

Similarly, in ruling this year that exporting software information and transport media does not trigger liability under Section 271(f), the Court applied the same principle in narrowly construing Section 271(f): "If the patent law is to be adjusted better 'to account for the

---

[3]     This same strict construction of Section 271(a) applies to method claims. _See NTP, Inc. v. Research In Motion, Ltd._, 418 F.3d 1282, 1318 (Fed. Cir. 2005) ("a process cannot be used 'within' the United States as required by section 271(a) unless each of the steps is performed within this country.")

realities of software distribution,' the alteration should be made after focused legislative consideration, and not by the Judiciary forecasting Congress' likely disposition." *Microsoft Corp. v. AT&T Corp.*, 127 S. Ct. at 1760 (citation omitted).[4]

In each case, the Court refused to extend infringement beyond the reach clearly permitted by the literal language of the Statute.  Here, to prevent overreaching by Veritas, it is critical that the Court block Veritas from reaching trial with any infringement or damages legal theory that extends beyond what is clearly permitted by the plain language of Section 271.

### B.   Veritas' Burden on this Motion for Summary Judgment

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the non-movant bears the burden of proof, then this initial burden may be met by "pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once this initial burden of the movant is met, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  The non-moving party cannot rest on the pleadings alone but must designate specific facts that establish that there is a genuine triable issue.  *Celotex,* 477 U.S. at 324.  The moving party is entitled to summary judgment when the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* at 322; *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099 (9th Cir. 2000).  In other words, if the evidence presented by the non-movant

---

[4]     And, in another warning of the dangers of overreaching by patent owners and applicants, this year in *KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727, 1741 (2007), the Court recognized the public harm caused by granting patents on inventions that are not truly innovative:  "Granting patent protection to advances that would occur in the ordinary course without real innovation retards progress and may, in the case of patents combining previously known elements, deprive prior inventions of their value or utility."

1   could not support a verdict by a reasonable jury in its favor, after all justifiable inferences are

2   drawn in its favor, then summary judgment must be granted.  *Anderson*, 477 U.S. at 248, 255.

3          Veritas bears the burden of proving infringement by a preponderance of the evidence.

4   *See Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991).

5          To prove contributory infringement, under 35 U.S.C. § 271(c), Veritas must show, by a

6   preponderance, that the accused software has "no substantial noninfringing uses."  *Golden*

7   *Blount, Inc. v. Robert H. Peterson Co.*, 365 F.3d 1054, 1061 (Fed. Cir. 2004).  More

8   particularly, as infringement must be proven claim by claim and accused "product" by accused

9   "product", Veritas must prove, for each asserted patent claim and for each item of accused

10  software separately distributed by Microsoft, that the software has no non-infringing uses vis-

11  à-vis that claim.  *See Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351

12  (Fed. Cir. 2001) ("infringement and validity analyses must be performed on a claim-by-claim

13  basis"); *L & W, Inc. v. Shertech, Inc.*, 471 F.3d 1311, 1318 (Fed. Cir. 2006) ("the burden of

14  proof on infringement . . . falls on . . . the patentee" and the burden exists "as to each accused

15  device.").

16         Veritas also bears the burden of proving any damages for infringement it is entitled to

17  receive.  *Lindemann Maschinenfabrik GmbH v. American Hoist & Derrick Co.*, 895 F.2d 1403,

18  1406 (Fed. Cir. 1990).

19

20

21

22

23

24

25

26

27

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

**V.    BECAUSE OF THE SUBSTANTIAL NON-INFRINGING USES, MICROSOFT'S PUBLICATION AND DISTRIBUTION OF THE ACCUSED SOFTWARE CANNOT BE CONTRIBUTORY INFRINGEMENT UNDER SECTION 271(C) OR INDUCEMENT INFRINGEMENT UNDER SECTION 271(B)**

With limited exceptions, a patent cannot be used to block commerce in something it does not claim.  One strictly limited exception is 35 U.S.C. § 271(c)'s "contributory infringement" provision.[5]  Section 271(c) permits, with several restrictions, a patent owner to block sales of a product that <u>inevitably</u> causes direct infringement of the patent.  Because a product with a non-infringing use does not inevitably lead to direct infringement, it is <u>not</u> contributory infringement to sell such a product.  *See Dawson Chemical Co. v. Rohm & Haas Co.*, 448 U.S. 176, 200 (1980); *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361 (Fed. Cir. 2003).  On the contrary, a patent owner who attempts to control commerce in such an <u>unpatented</u> product is liable for patent misuse.  *Illinois Tool Works Inc. v. Independent Ink, Inc.,* 547 U.S. 28, 40-41 (2006) ("Congress included a provision in its codification that excluded some conduct, such as a tying arrangement involving the sale of a patented product tied to an "essential" or "nonstaple" product that <u>has no use except as part of the patented product or method</u>, from the scope of the patent misuse doctrine.") (emphasis added).  "Section 271(c) identifies the basic dividing line between contributory infringement and patent misuse.  It <u>adopts a restrictive definition of contributory infringement</u> that distinguishes between staple and nonstaple articles of commerce.  <u>It also defines the class of nonstaple items narrowly</u>."  *Dawson*, 448 U.S. at 200 (emphases added).

The Supreme Court's restrictive construction of Section 271(c) recognizes that overreaching by patent owners can retard innovation, contrary to the Constitutional purpose of

---

5       Section 271(c) provides:  "Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer."

the Patent System.  "[I]n contributory infringement cases . . . the Court has always recognized the critical importance of not allowing the patentee to extend his monopoly beyond the limits of his specific grant.  These cases deny the patentee any right to control the distribution of unpatented articles unless they are 'unsuited for any commercial noninfringing use'."  *Dawson Chemical*, 448 U.S. at 198 (emphasis added).  Unless a commodity "has no use except through practice of the patented method," the patent owner has no right to claim that its distribution constitutes contributory infringement.  *Id*. at 199 (emphasis added).  "Congress granted to patent holders a statutory right to control nonstaple goods that are capable only of infringing use in a patented invention, and that are essential to that invention's advance over prior art."  *Id*. at 213 (emphasis added).

This same restriction applies to inducement infringement under 35 U.S.C. § 271(b).  A patent owner can no more control commerce, in unpatented products having substantial non-infringing uses, under Section 271(b) than under Section 271(c).  *See Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1275 (Fed. Cir. 2004) ("The mere sale of a product capable of substantial non-infringing uses does not constitute indirect infringement of a patent.").  That is so even if the seller knows that its multi-use product is sometimes used in an infringing manner; such knowledge being "legally irrelevant."  *Warner-Lambert Co. v. Apotek Corp.*, 316 F.3d 1348, 1364 (Fed. Cir. 2003).

When determining whether an accused product has a substantial noninfringing use, it is the thing sold, not some allegedly infringing ingredient or portion of the accused product, that matters:

> Section 271(c) requires examination of the patented method only in determining whether the material the accused actually sells constitutes a material part of the invention and is known by the accused to be especially made or adapted for use in infringing the patent.  Neither party here "sells" potassium nitrate, and Block's attempted limitation of the staple/nonstaple inquiry to that mere ingredient would eliminate the § 271 (c)-mandated inquiries relating to whether what was actually sold was a material part of the invention and whether the seller knew that what was actually sold was especially made or adapted for use in infringement of the patent.

1   *Hodosh v. Block Drug Co.*, 833 F.2d 1575, 1578 (Fed. Cir. 1987) (footnote omitted).  This rule

2   makes sense because it is only by looking at the product as a whole, with all of its potential

3   uses, that one can determine whether sale of the product <u>inevitably</u> leads to use of the patented

4   method.  *See Universal Electronics, Inc. v. Zenith Electronics Corp.*, 846 F. Supp. 641, 652

5   (N.D. Ill. 1994) ("the Court finds that there is no genuine issue of material fact that the

6   [accused products] have substantial non-infringing uses in that those [products] can operate" in

7   ways that do not arguably infringe).  Thus, where accused computer software can be used in

8   multiple ways, one of which does not infringe, there is no contributory infringement.  *Lucent*

9   *Tech. v. Gateway, Inc.*, 2007 WL 925510 *2 (S.D. Cal. March 21, 2007).  If "a customer can

10  buy a single computer loaded with all the software and never [use it in an infringing manner],"

11  there is no contributory infringement.  *Lucent Tech. v. Gateway, Inc.*, 2007 WL 925502 *4

12  (S.D. Cal. March 19, 2007) (focusing on "whether defendant's product as sold was a staple

13  article, not whether the product contained components that themselves could have other

14  noninfringing uses.") (citation omitted); *TV Interactive Data Corp. v. Microsoft Corp.*, No. C

15  02 02385 JSW, 2005 WL 1910929 at *4 (N.D. Cal. Aug. 10, 2005) (holding that substantial

16  non-infringing uses of Windows software required summary judgment against patentee on its

17  Section 271(c) allegations) ("TVI").

18          Veritas cannot meet its burden of proof on this issue for any combination of an asserted

19  patent claim and an accused item of Microsoft software.  Its expert, Dr. Nichols, admitted

20  several non-infringing uses in his deposition, and admitted that he had not even tried to identify

21  or quantify the non-infringing uses of the accused software (APX0128:11-16, APX0135:1-7,

22  APX0139.A:9-APX0139.A:16, APX00145:6-11, APX0161:6-24, APX0163:7-APX0165:25),

23  and that he is not an expert in how OEMs or system administrators deploy operating systems

24  (APX0144.A:5-9).  On the contrary, under the above case law, the record establishes, beyond

25  any genuine dispute of material fact, that for each asserted patent claim, each item of multi-

26  purpose software accused by Veritas has substantial non-infringing uses.

27

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

For example, the multi-purpose Windows® Vista and Server 2008 operating system software licensed by Microsoft (like the Windows software at issue in *TVI*) obviously has thousands of uses that do not inevitably require backing up and restoring the operating system. Veritas tries to divert attention from these uses by focusing on what its own expert terms "built-in functionality" of the operating system (Nichols' Report at APX0105), but that embedded functionality does not operate apart from the operating system, so it is not the focus under Section 271(c) as construed by the Supreme Court and Federal Circuit.  Further, even if an embedded Complete PC and Server Backup functionality were offered and usable separately from the operating system software, which it is not, it still would have substantial non-infringing uses, such as backing up the operating system but never restoring it, as Veritas' expert, Dr. Nichols, has admitted.

The same is true for the accused multi-purpose OPK, WAIK, and BDD software toolkits.  They can be used in myriad ways that do not even arguably infringe the '573 Patent, as explained above.  In other words, distribution of these toolkits does not inevitably lead to practice of the methods accused by Veritas, and thus, as a matter of law, cannot contributorily infringe.

Table A (APX0192) identifies 18 exemplary ways of using the accused software—seven of which are summarized above—that do not even arguably infringe any '573 Method Patent claim.  These are just the tip of the iceberg of non-infringing uses, but are more than sufficient to meet Microsoft's burden of production as movant under Fed. R. Civ. P. 56.

In sum, as there is no genuine issue of material fact, the Court should:

(1) hold that each item of accused Microsoft software information and media in this case has substantial non-infringing uses;

(2) hold that each of the 18 uses identified in Table A (APX0192) is such a non-infringing use; and

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1    (3) on this ground dismiss, on summary judgment, all claims by Veritas that

2 Microsoft's distribution of the accused software infringes under Section 271(b) or 271(c).

3 **VI.    MICROSOFT DISTRIBUTING SOFTWARE**
        **INFORMATION, AND SOFTWARE TRANSPORT MEDIA**
4        **(NOT USED IN AN ACCUSED PROCESS), AS A MATTER OF**
        **LAW CANNOT CONSTITUTE CONTRIBUTORY INFRINGEMENT**
5

6    Microsoft does not sell computers, hard disks or backup media.  Rather, it is a publisher

7 of software information.  It publishes its software electronically (e.g., via Web downloads) or

8 on DVDs used for transport.  Microsoft also provides retail DVDs with its operating systems,

9 but Veritas' expert Nichols admitted in deposition that installing Windows® Vista from a retail

10 DVD does not infringe.  (APX0151:9-APX0153:23).  Thus, neither Veritas nor its expert have

11 identified any physical material or apparatus, sold by Microsoft, that is used in the accused

12 deployment or backup and restore processes.

13    Like Section 271(f) (export infringement), Section 271(c) (contributory infringement)

14 deals with the physical products of manufacturers, not the information "products" of engineers.

15 Specifically, for contributory infringement of a method claim, one must sell, etc. "a material or

16 apparatus for use in practicing a patented process, ...."  35 U.S.C. § 271(c); *see PharmaStem*

17 *Therapeutics, Inc. v. ViaCell, Inc*., 491 F.3d 1342, 1357 (Fed. Cir. 2007) (refusing to expand

18 Section 271(c) beyond its plain language to encompass provision of a service for

19 compensation).  As a matter of law, Microsoft cannot contributorily infringe the '573 Method

20 Patent without selling, offering to sell, or importing a computer or hard disk or other <u>physical</u>

21 material or apparatus actually used in a patented process.  Merely providing information that

22 may be copied onto other physical devices that are then used in the patented method is no more

23 sufficient to trigger Section 271(c) liability than it is to trigger Section 271(f) liability,

24 *Microsoft Corp. v. AT&T Corp.*, 127 S. Ct. 1746, 1761 (2007) (export of software information

25 and "golden master" transport media do not trigger Sec. 271(f) infringement of asserted

26 apparatus and method claims).

27

1     The materials and apparatus referenced in Section 271(c) are physical matter, not

2 information.  A "product, device, or apparatus, … are tangible items."  *NTP, Inc. v. Research*

3 *In Motion, Ltd.*, 418 F.3d 1282, 1322 (Fed. Cir. 2005) ("*RIM*").  Conversely, "the

4 'transmission of information,' like the 'production of information,' does not entail the

5 manufacturing of a physical product."  *Id*. at 1323.

6     Software is "information," "more like notes of music in the head of a composer than 'a

7 roller that causes a player piano to produce sound.'"  *Microsoft Corp. v. AT&T Corp.*, 127 S.

8 Ct. 1746, 1756 (2007).  Microsoft's accused software information is no more a "material or

9 apparatus," than are notes of music.  Nor can Microsoft's intangible software information be

10 used in practicing a patented computer-implemented process, as required by Section 271(c),

11 any more than it can be installed or executed on a computer.  *Id*. at 1755-57 (intangible

12 software cannot be combined with a computer).  Thus, as a matter of law, the accused software

13 information published by Microsoft cannot be considered "a material or apparatus for use in

14 practicing a patented process," as required by Section 271(c).

15     Veritas and its expert Dr. Nichols have ignored this rule of law.  Veritas has not shown

16 that Microsoft has supplied even a single molecule used in practicing the methods claimed in

17 the '573 Patent.

18     In sum, as there is no genuine issue of material fact, the Court should dismiss, as a

19 matter of law, Veritas' claim that Microsoft has infringed the '573 Patent under Section 271(c).

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1

2

3

**VII.    VERITAS CANNOT SHOW *INDIRECT* INFRINGEMENT
BY MICROSOFT BECAUSE IT CANNOT SHOW *DIRECT*
INFRINGEMENT BY A CUSTOMER OF MICROSOFT PERFORMING THE
CLAIMED METHODS USING MICROSOFT'S SOFTWARE INFORMATION**

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

To directly infringe a method claim, under 35 U.S.C. § 271(a)[6], one must perform each step of claimed method in the U.S., without authority of the patent owner.  *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1318 (Fed. Cir. 2005)*; see E-Pass Techs., Inc. v. 3Com Corp.*, 473 F.3d 1213, 1223 (Fed. Cir. 2007).  Distributing information or tools that may be used by others to perform a patented method, does not directly infringe a method patent claim.  *Joy Techs., Inc. v Flakt, Inc.*, 6 F.3d 770, 774 (Fed. Cir. 1993) ("the sale of equipment to perform a process is not a direct infringement of the process"); *see UTStarcom, Inc. v. Starent Networks Corp.*, 2005 WL 3299714 (N.D. Cal. Dec. 6, 2005) ("The manufacture and sale of a <u>device</u> without more cannot directly infringe a <u>method</u> patent for a method that employs such devices; such a method patent is directly infringed only when the device is actually used in the claimed method.") (citing *Mendenhall v. Cedarapids, Inc.,* 5 F.3d 1557, 1579 (Fed. Cir. 1993)).  Nor does selling a product capable of being used in the patented manner.  *See, e.g., Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1310-11 (Fed. Cir. 2006) (rejecting district court holding that a method claim would be infringed by selling dental position adjustment devices merely capable of infringing.)[7]

19

20

21

Without direct patent infringement, there is no indirect patent infringement.  "Liability for either active inducement of infringement or for contributory infringement is dependent

22

---

23

24

[6]      "Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."  35 U.S.C. § 271(a).

25

26

[7]      Veritas has presented no direct or circumstantial evidence sufficient to show that an employee of Microsoft has used the accused software to practice the patented method in the U.S., for any of the asserted patent claims.  Thus, the Court should dismiss, on summary judgment, the claim by Veritas that Microsoft has directly infringed the '573 Patent.

27

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

upon the existence of direct infringement." *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774 (Fed. Cir. 1993). *See also, e.g., Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 341 (1961) (It is a "fundamental precept that there can be no contributory infringement in the absence of a direct infringement."); *Novartis Pharm. Corp. v. Eon Labs Mfg.*, 363 F.3d 1306, 1308 (Fed. Cir. 2004) ("When indirect infringement is at issue, it is well settled that there can be no inducement or contributory infringement absent an underlying direct infringement."); *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004) ("[i]ndirect infringement, whether inducement to infringe or contributory infringement, can only arise in the presence of direct infringement.").

Thus, for each asserted patent claim and for each accused software offering of Microsoft, Veritas must prove that a third-party, with no license or authorization from the patent owner or its agent, directly infringed the asserted method claim in the U.S. using that software. *See Moleculon Research Corp. v. CBS, Inc*., 793 F.2d 1261 (Fed. Cir. 1986) (direct infringement may be proven by circumstantial evidence). As noted, Veritas provided no such evidence—direct or circumstantial—in its response to Microsoft's interrogatory seeking disclosure of such infringements, or in its expert reports. And, it did not depose a single Microsoft customer to meet its burden of proof on this issue.

It is unlikely that Veritas will be able to prove any instance of direct infringement using the accused software. For example, to prove direct infringement of independent claim 30, Veritas must prove, among other things, that someone in the U.S., without authority of the patent owner or its agent, used Microsoft's accused software kits to copy an operating system from a disk drive of a master computer—configured with the desired configuration for a target computer—to a first media, and to copy configuration-specific data files from that same disk drive of the master computer to a second media, and then used that second media to load that identically configured operating system onto the target computer. (*See* APX0014). Veritas had identified no evidence that anyone has ever done that with the accused software.

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1    In sum, for each asserted patent claim and each accused item of software for which

2    Veritas fails to present sufficient evidence (creating a genuine issue of material fact)

3    establishing direct infringement of that patent claim using that software, the Court should

4    dismiss, on summary judgment, all claims by Veritas that Microsoft has indirectly infringed

5    that patent claim with that software.

6    **VIII.  VERITAS CANNOT SHOW THE**
     **INTENT REQUIRED FOR INDUCEMENT**
7    **OR RECKLESSNESS REQUIRED FOR WILLFUL INFRINGEMENT**

8    Inducement infringement under 35 U.S.C. § 271(b) requires a specific intent to

9    encourage another to infringe the patent.  Merely encouraging the acts that turn out to be an

10   infringement is not enough.  The actor needs to know of the patent and intend and encourage

11   its infringement:

12
13          [T]he intent requirement for inducement requires more than just intent to
            cause the acts that produce direct infringement. Beyond that threshold
14          knowledge, the inducer must have an affirmative intent to cause direct
            infringement. In the words of a recent decision, inducement requires "'that
15          the alleged infringer knowingly induced infringement and possessed
            specific intent to encourage another's infringement.'" *MEMC Elec.*, 420
16          F.3d at 1378 (Fed. Cir. 2005) (quoting *Minn. Mining & Mfg. Co. v.*
            *Chemque, Inc.*, 303 F.3d 1294, 1304-05 (Fed. Cir. 2002)). Accordingly,
17          inducement requires evidence of culpable conduct, directed to
            encouraging another's infringement, not merely that the inducer had
18          knowledge of the direct infringer's activities.  (Citations omitted).

19   *DSU Med. Corp. v. JMS Co.,* 471 F.3d 1293, 1306 (Fed. Cir. 2006) (*en banc* in relevant part).

20   Under the Federal Circuit's *en banc* ruling on August 20, 2007, willful infringement

21   also requires strict proofs:

22
23          proof of willful infringement permitting enhanced damages requires at
            least a showing of objective recklessness. Because we abandon the
24          affirmative duty of due care, we also reemphasize that there is no
            affirmative obligation to obtain opinion of counsel.
25          ***

26

27

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

> Accordingly, to establish willful infringement, <u>a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent</u>. *See Safeco*, slip op. at 19 ("It is [a] high risk of harm, objectively assessed, that is the essence of recklessness at common law."). The state of mind of the accused infringer is not relevant to this objective inquiry. <u>If this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer.</u>

*In re Seagate Technology, LLC*, ___ F.3d ___, 2007 WL 2358677 *5, 12 (Fed. Cir. August 20, 2007) (emphasis added).

Veritas has no qualified expert opinion or other evidence meeting its burden on either issue.

In particular, there is no evidence that any managing agent (or agent at all) both (1) knew of the '573 Patent and (2) "knowingly induced infringement and possessed specific intent to encourage another's infringement" using Microsoft's accused software.  Veritas' expert, Dr. Nichols, admitted that he could not name a single Microsoft employee who had read the '573 Patent and induced a Microsoft customer to infringe it.  (APX0162:21-APX0163:5).  Veritas has not established in deposition that any Microsoft employee involved with the accused software (or otherwise) has ever read the '573 Patent.

Veritas notes a number of Microsoft patents in which the '573 Patent was cited in prosecution.  This is not nearly enough to survive JMOL under *DSU* or *Seagate*.  Microsoft has more than 7,500 U.S. patents issued, and more than 75,000 employees.  It would be illogical to merely presume, without supporting evidence, that any particular reference cited in patent prosecution will be provided to and read by managing agents, or others, responsible for designing or publishing the accused software.  Veritas has identified no patent-practice expert to opine on this issue.  Nor has it identified any hard evidence, as distinct from unsupported conjecture, that <u>any</u> employee of Microsoft had ever even seen or read the '573 Patent prior to its delayed insertion into this suit, or had a specific intent to induce infringement of this patent,

1  or knew or should have known that his or her actions had an objectively high likelihood of

2  constituting infringement of a valid patent.

3      Accordingly, the Court should dismiss Veritas' claim of inducement infringement and

4  willful infringement[8] as to all of the accused software and all of the asserted claims.

5  **IX.  THE COURT SHOULD PROHIBIT VERITAS FROM SEEKING**
       **DAMAGES FOR ANYTHING BEYOND THE SPECIFIC INSTANCES**
6      **OF DIRECT INFRINGEMENT—IF ANY—VERITAS ESTABLISHES *NOW***

7      Veritas has proffered no evidence that Microsoft itself has ever practiced the patented

8  method in the U.S., since issuance of the '573 Patent, and it does not appear to be seeking any

9  damages for any such alleged internal-use infringements by Microsoft.  Nor, as noted above,

10 has Veritas identified a single instance of direct infringement by a Microsoft customer, induced

11 by Microsoft.  But, if Veritas manages, in opposition to this Motion, to create a triable issue of

12 fact of one or more instances of direct infringement for which Microsoft is liable, for one or

13 more asserted patent claims and one or more items of accused software, then the Court should

14 limit Veritas' infringement liability and damages case to <u>only</u> those specific instances of direct

15 infringement.

16     Damages for vicarious liability are available only to the extent of direct liability.  Even

17 when indirect infringement has been established, damages are still limited to the sale of

18 products actually used to directly infringe, and are not available for sales of products never

19 used in an infringing manner.  *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354,

20 1372 (Fed. Cir. 2006).  "There can be no cognizable lost sale on which to base a damages

21 award under the patent laws without an act of infringement to warrant it."  *Id*. at 1373.  This

22 item-by-item construction requirement is particularly important in this case as recipients of the

23

24 ─────────────

25 [8]     Furthermore, the Court should grant partial summary judgment of no willful
   infringement for conduct after the filing of the Complaint, because Veritas did not move for a
26 preliminary injunction.  *See Seagate*, at *8 ("A patentee who does not attempt to stop an
   accused infringer's activities [by moving for a preliminary injunction] should not be allowed to
27 accrue enhanced damages based solely on the infringer's post-filing conduct").

1  accused software kits need not use them at all when they deploy Microsoft's operating system

2  software.

3        This rule of law is reinforced where, as here, the accused "product" has substantial non-

4  infringing uses—meaning that direct infringement by customers is not inevitable—in which

5  case the patent owner is entitled to pursue liability and damages for <u>only</u> actual infringing uses:

6        <u>[The Patent owner] must therefore either demonstrate that [the accused</u>
       <u>products] necessarily infringe the [patent], or point to a specific instance of</u>
7      <u>direct infringement and restrict its suit to liability stemming from that specific</u>
       <u>instance</u>. We must therefore determine whether all [accused products] directly
8      infringe the [patent], or whether there may also be substantial non-infringing
       configurations of [accused technology standard] compliant networks.
9

10 *Dynacore*, 363 F.3d at 1275-76 (emphasis added.)

11       Thus, as a matter of law, even where the alleged infringer's customers have benefited

12 from having the <u>capability</u> to infringe, where there is no actual infringement, there is no case

13 for liability or damages against the supplier of that capability.  For example, in *Oak Indus., Inc.*

14 *v. Zenith Electronics Corp.*, 726 F. Supp. 1525, 1543 (N.D. Ill. 1989), the Court rejected the

15 plaintiffs' argument that "a reasonable royalty should be calculated on all units capable of

16 infringing."  The Court explained that it found "no support in the patent statute or case law for

17 plaintiffs' position" and granted partial summary judgment "limiting plaintiffs' recovery only

18 to converters which plaintiffs have proved were used to infringe."  *Id.*

19       Returning to the spare-tire-installation method patent analogy that began this

20 Memorandum, the owner of the method patent challenging a multi-use kit must limit its

21 liability and damages case to those <u>specific</u> instances—if any—that it establishes (sufficiently

22 to reach trial) where a flat occurred, and a customer used the accused kit and its instructions to

23 install the spare using the patented method.  To pursue any broader damages would be an

24 illegal extension of its limited method patent right, harming the public.

25       In sum, for each patent claim asserted by Veritas and for each item of accused software,

26 the Court should dismiss, on summary judgment, all claims for liability and damages not

27

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

supported, now, with a <u>specific instance</u> of direct infringement of that claim with a particular item of that accused software.  For example, if Veritas is able to identify (sufficiently to create a triable issue of material fact) only ten instances of alleged direct infringement of '573 Patent Claim 30 using Microsoft's OPK software kit, then the Court should limit Veritas' liability and damages case at trial on that claim and software to those ten instances, and nothing more.  (*Cf.* Nichols TR at APX0139:7-10 ("I did not do any research on trying to determine the number of people who had used the Microsoft products to infringe the '573 patent.")).

**X.    <u>CONCLUSION</u>**

For the foregoing reasons, the Court should dismiss Veritas' claim for '573 Patent infringement liability and damages in its entirety.  In the alternative, depending on the evidence proffered by Veritas in its opposition papers, the Court should limit Veritas to triable issues, established now on this record, of "specific instances" of actual direct infringements complying the above-cited U.S. Patent Law.

DATED this 31st day of August, 2007.

DANIELSON HARRIGAN LEYH & TOLLEFSON

By:    /s/ Todd M. Siegel
Arthur W. Harrigan, Jr., WSBA #1751
Christopher T. Wion, WSBA #33207
*Attorneys for Defendant and Counterclaim Plaintiff,*
*Microsoft Corporation*

Dan K. Webb, *pro hac vice*
Bruce R. Braun, *pro hac vice*
Raymond C. Perkins, *pro hac vice*
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL  60601
(312) 558-5600

Page 24
CV 06-0703 JCC
MICROSOFT'S MOTION FOR SUMMARY JUDGMENT ON
VERITAS' CLAIM OF INFRINGEMENT OF U.S. PATENT
NO. 5,469,573, AND MEMORANDUM IN SUPPORT

LAW OFFICES
DANIELSON HARRIGAN LEYH & TOLLEFSON LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL. (206) 623-1700   FAX, (206) 623-8717

Kristin L. Cleveland, *pro hac vice*
James E. Geringer, *pro hac vice*
Samir N. Pandya, *pro hac vice*
Todd M. Siegel, *pro hac vice*
Garth A. Winn, *pro hac vice*
John D. Vandenberg, WSBA #38445
KLARQUIST SPARKMAN, LLP
One World Trade Center
121 S.W. Salmon Street, Suite 1600
Portland, Oregon  97204
Telephone:  (503) 595-5300
Facsimile:  (503) 595-5301

CV 06-0703 JCC
MICROSOFT'S MOTION FOR SUMMARY JUDGMENT ON
VERITAS' CLAIM OF INFRINGEMENT OF U.S. PATENT
NO. 5,469,573, AND MEMORANDUM IN SUPPORT

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## CERTIFICATE OF SERVICE

I, Todd M. Siegel, swear under penalty of perjury under the laws of the State of

Washington to the following:

1.      I am over the age of 21 and not a party to this action.

2.      On the 31st of August, 2007, I caused the preceding document to be served on

counsel of record in the following manner:

**BY E-MAIL AND OVERNIGHT DELIVERY**
Gale Roy Peterson
Cox Smith Matthews Incorporated
112 E. Pecan Street, Suite 1800
San Antonio, TX  78205-1521
grpeters@coxsmith.com; agarcia@coxsmith.com

**BY E-MAIL**
Ralph H. Palumbo
Summit Law Group PLLC
315 Fifth Avenue South, Suite 1000
Seattle, Washington  98104
ralphp@summitlaw.com

**BY E-MAIL**
Michael J. Schallop
Latham & Watkins
140 Scott Drive
Menlo Park, CA 94025
michael.schallop@lw.com

Mark A. Flagel
Belinda Lee
Latham & Watkins LLP
633 West Fifth Street, Suite 4000
Los Angeles, California  90071
mark.flagel@lw.com
belinda.lee@lw.com

                                    /s/ Todd M. Siegel
                      _____

Page 26
CV 06-0703 JCC
MICROSOFT'S MOTION FOR SUMMARY JUDGMENT ON
VERITAS' CLAIM OF INFRINGEMENT OF U.S. PATENT
NO. 5,469,573, AND MEMORANDUM IN SUPPORT

LAW OFFICES
**DANIELSON HARRIGAN LEYH & TOLLEFSON LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717