UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VERITAS OPERATING CORPORATION, a Delaware corporation,<br><br>        Plaintiff,<br><br>   v.<br><br>MICROSOFT CORPORATION, a Washington corporation,<br><br>        Defendant.<br>_____<br>MICROSOFT CORPORATION, a Washington corporation,<br><br>        Counterclaim Plaintiff,<br><br>   v.<br><br>VERITAS OPERATING CORPORATION, a Delaware corporation, and VERITAS SOFTWARE CORPORATION, a Delaware corporation,<br><br>        Counterclaim Defendants. | CASE NO. C06-0703-JCC<br><br>ORDER |

ORDER – 1

This matter comes before the Court on Plaintiff Veritas Operating Corporation (Veritas)'s Motion to Exclude Expert Testimony of Dr. Marco Iansiti (Dkt. No. 255), Defendant Microsoft Corporation (Microsoft)'s Response in opposition (Dkt. No. 337), and Veritas' Reply (Dkt. No. 348). The Court has carefully considered these papers together with their supporting declarations and exhibits, and has determined that oral argument is unnecessary. The Court hereby GRANTS IN PART and DENIES IN PART the motion and rules as follows.

**I.    BACKGROUND**

Dr. Marco Iansiti is the Director of Research and a Professor of Business Administration in the Technology and Operations Management Department at the Harvard Business School. (Iansiti Report 2 (Dkt. No. 257 at 3).) Microsoft hired Dr. Iansiti to calculate Microsoft's alleged damages related to its breach of contract counterclaims in this lawsuit. (*Id.*) Ultimately, Dr. Iansiti submitted three expert reports: one on Microsoft's counterclaim damages, and two rebutting opinions of Veritas' experts, Jeffrey Chase (Veritas' technology expert) and Michael Wagner (Veritas' damages expert). (Def.'s Resp. 1 (Dkt. No. 337 at 2).) Dr. Iansiti describes his qualifications as follows:

> I joined the faculty of Harvard Business School in 1989 to research the management of technological innovation, product development, and operations. During my career at Harvard Business School, I have performed academic research on the structure, processes, operations, product development and technology aspects of a large number of commercial enterprises focusing on software and technology-intensive businesses. I have worked with and advised a variety of Global 1000 firms in industries ranging from pharmaceuticals to electronics. I research and have also worked with and advised a number of software start-up companies. During a one-year leave of absence from Harvard, I worked as the Vice President of Products and Strategy at Model N., Inc., which focuses on enterprise software applications for pricing and contract management. I have also prepared and presented expert opinions in numerous cases. Over the last fifteen years at Harvard, I fulfilled a variety of teaching and administrative assignments related to the development and management of technology. I helped create and co-chaired Harvard's Ph.D. program in Information Technology and Management. I taught a variety of courses in the management of technology, product development, and operations. I authored and co-authored a number of articles, papers, books, cases, and research notes that focus on technology and operations strategy and on the management of operations and product development.

(Iansiti Report 2–3 (Dkt. No. 257 at 3–4).)

ORDER – 2

Veritas seeks to exclude from trial three portions of Dr. Iansiti's testimony. Specifically, Veritas challenges his opinions as to "(a) alleged expenses and losses incurred by Microsoft as a result of Veritas' alleged breach of contract, (b) Microsoft's development of LVM using the C++ programming language, and (c) the quality of the Veritas LDM code that was provided to Microsoft." (Pl.'s Mot. 1 (Dkt. No. 255 at 4).)

## II.     APPLICABLE STANDARD

An expert witness may testify at trial if such expert's "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue[.]" FED. R. EVID. 702. Such witness must be "qualified as an expert by knowledge, skill, experience, training, or education" and may testify "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Id*. Expert testimony is liberally admitted under the Federal Rules. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993) (noting that Rule 702 is part of the "liberal thrust of the Federal Rules and their general approach of relaxing the traditional barriers to opinion testimony") (internal quotations omitted). However, the "trial judge must ensure that any and all scientific testimony [or any other expert testimony] or evidence admitted is not only relevant, but reliable." *Id*. at 589; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (extending *Daubert*'s requirements of relevance and reliability to non-scientific testimony). That said, "a trial court not only has broad latitude in determining whether an expert's testimony is reliable, but also in deciding *how* to determine the testimony's reliability." *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) (internal citations omitted) (emphasis in original). "Concerning the reliability of non-scientific testimony . . . , the *Daubert* factors (peer review, publication, potential error rate, etc.) simply are not applicable to this kind of testimony, whose reliability depends heavily on the *knowledge and experience* of the expert, rather than the methodology or theory behind it." *Id*. (internal citation omitted) (emphasis in original). The trial court's gatekeeping role under *Daubert* is satisfied, even without a formal hearing, by the court's probing

ORDER – 3

1  of the expert's knowledge and experience. *Id*. at 1018.

2  **III.   ANALYSIS**

3      **A.    Dr. Iansiti's Testimony Related to Microsoft's Breach of Contract Counterclaim**

4      Veritas challenges Dr. Iansiti's opinion as to Microsoft's damages stemming from Veritas' alleged

5  breach of the parties' Agreement, on grounds that his methodology for calculating Microsoft's

6  development expenses are speculative and unreliable. (Pl.'s Mot. 7 (Dkt. No. 255 at 10).) Due to the fact

7  that the Court has recently dismissed Microsoft's breach-of-contract-related counterclaims, however, the

8  parties' arguments are no longer relevant to the posture of the case. Veritas' motion is therefore

9  DENIED as moot on this issue.

10     **B.    Dr. Iansiti's Rebuttal Testimony Related to Microsoft's Development of LVM Using the C++ Programming Language and the Quality of the Veritas LDM Code**

11     **Provided to Microsoft**

12     Veritas argues that Dr. Iansiti should not be permitted to rebut the opinions of Dr. Chase, Veritas'

13 technical and source code expert, on issues that require source code analysis. Veritas asserts that Dr.

14 Iansiti was not hired as—and is not qualified to testify as—a computer science expert and did not

15 examine the relevant source code in this case. Specifically, Veritas seeks to bar Dr. Iansiti from testifying

16 that it was "reasonable for Microsoft to move technologies like the Embedded Product from the original

17 C language to the C++ language" and that Veritas' LDM code as delivered to Microsoft was "severely

18 buggy." (Pl.'s Mot. 5 (Dkt. No. 255 at 8).) Veritas argues alternatively that even if the Court finds that

19 Dr. Iansiti's testimony as to these matters is not excluded under Rule 702 and *Daubert*, the Court should

20 nevertheless exclude the testimony under Rule 403 because its "probative value is substantially

21 outweighed by the danger of unfair prejudice." FED. R. EVID. 403. (*Id*. at 11.)

22     Microsoft counters, however, that the opinions Veritas challenges are more accurately summed

23 up as (1) "Microsoft's use of the C++ programming language is consistent with industry and Microsoft

24 standards" and (2) "the severe bugginess of the Veritas code necessitated Microsoft's work reintegrating

25 that code." (Def.'s Resp. 9 (Dkt. No. 337 at 10).) Microsoft posits that contrary to Veritas' arguments,

26 ORDER – 4

these opinions are not dependent on source code analysis, and are "well within Dr. Iansiti's software development expertise, experience and knowledge." (*Id.* at 10.)

The Court notes that, notwithstanding the three short statements in Dr. Iansiti's deposition cited by Veritas, in which he admits that he is not a computer science expert in this case, is not an expert with regard to code analysis, and is not an expert in software architecture, (Iansiti Dep. 66:11–12; 168:14–15, 20–21 (Dkt. No. 257-3 at 12, 21)), Dr. Iansiti has a significant amount of experience in, and knowledge of, the computer software industry. For example, as he stated in his deposition:

> I spent an awful lot of my life in the computer industry to begin with. I have worked and led teams that did essentially product management and product engineering in—for a software company. I created a program in conjunction with my friend H.T. Kung in information technology management that is a cross-program within computer science and the . . . Harvard business school. And I've taught classes in the computer science department. . . . [A] lot of my physics Ph.D. was in computer programming and simulation. . . . I have led product management and product strategy for a company called Model N. So I had a lot of people working for me writing features and specifications for a product that worked on UNIX.

(Iansiti Dep. 168:3–170:14 (Dkt. No. 257-3 at 21–23).)

The Court finds that Dr. Iansiti's knowledge and experience in the software industry qualify him to testify as to Microsoft's adoption of industry programming standards that were trending towards the use of C++ programming language. Veritas, in its Reply, appears to concede that his testimony, limited to those parameters, should be permitted. (Pl.'s Reply 5 (Dkt. No. 348 at 6).) However, not being Microsoft's source code expert, and not having examined the code at issue in this case, he will not be permitted to rebut Dr. Chase's opinions as to source code analysis. To that end, he will not be permitted to testify as to whether Veritas' LDM code as delivered to Microsoft was "severely buggy." Microsoft argues that Dr. Iansiti does not make this conclusion as an expert opinion, but rather cites evidence in the record that such was the case, and "from this evidence *opined* that 'Microsoft's bug fixes, including the reintegration effort, were needed to optimize the product, improve its quality, and better integrate it with the Windows environment.'" (Def.'s Resp. 12 (Dkt. No. 337 at 13) (emphasis in original).) However, Dr. Iansiti's opinion, as stated in the preceding sentence, depends on an evaluation of source code and as

ORDER – 5

such, the Court finds it is not a proper area of testimony for Dr. Iansiti.

Accordingly, Veritas' motion to exclude the testimony of Dr. Iansiti as to Microsoft's development of LVM using the C++ programming language is DENIED to the extent that such opinion does not depend upon source code analysis, and the motion is GRANTED with respect to Dr. Iansiti's testimony respecting the quality of the Veritas LDM code as provided to Microsoft. The Court reminds the parties that notwithstanding this Order, the Court will rule on pertinent objections to Dr. Iansiti's testimony as they arise at trial.

## IV. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS IN PART and DENIES IN PART Veritas' Motion to Exclude Expert Testimony of Dr. Marco Iansiti (Dkt. No. 255), as follows:

(1) Veritas' motion to exclude Dr. Iansiti's testimony related to Microsoft's counterclaim is hereby DENIED as moot;

(2) Veritas' motion to exclude the testimony of Dr. Iansiti as to Microsoft's development of LVM using the C++ programming language is DENIED to the extent that such opinion does not depend upon source code analysis; and

(3) the motion is GRANTED with respect to Dr. Iansiti's testimony respecting the quality of the Veritas LDM code as provided to Microsoft.

DATED this 11th day of March, 2008.

_____
John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER – 6